UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DAVID R. PADDISON,

Plaintiff,

v.

HAWLEY TROXELL ENNIS & HAWLEY LLP,

Defendant.

Case No. 1:23-cv-00252-AKB

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS AND MOTION TO STRIKE**

Before the Court are Defendant Hawley Troxell Ennis & Hawley LLP's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. 25) and its motion to strike (Dkt. 32) the declaration of Plaintiff David Paddison (Dkt. 11-1). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court grants Hawley Troxell's motion to strike and grants in part and denies in part its motion to dismiss.

## I. BACKGROUND

Paddison alleges Hawley Troxell violated 15 U.S.C. §§ 1692e and 1692f of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, and the Louisiana Unfair Trade Practices Act (LUTPA), LSA-R.S. 51:1401-1428, by forming an improper homeowners' association (HOA) and attempting to collect illegitimate debts, attorney fees, and interest charges related to that HOA. (Dkt. 1 at Ex. 2 at ¶¶ 1, 8). In support, Paddison alleges that he purchased real

property in McCall, Idaho, in June 2007, and that no HOA existed at that time. (Dkt. 1 at Ex. 2 at ¶¶ 24-25). According to Paddison, Hawley Troxell and others improperly created a HOA in November 2019, known as the White Cloud Homeowners Association, Inc. (White Cloud), and engaged in "a scheme" to burden Paddison's property, to "discriminate against out of state property holders, [to] encumber the property and then [to] direct their agents and assigns to make offers to purchase [Paddison's] property." (Dkt. 1 at Ex. 2 at ¶¶ 25-33).

At some point after forming White Cloud, Hawley Troxell began communicating with Paddison about amounts he allegedly owed White Cloud. According to Paddison, Hawley Troxell "represented to [him] that it [was] a debt collector." (Dkt. 1 at Ex. 2, ¶ 21). On July 20, 2020, Hawley Troxell demanded that Paddison pay "an unknown assessment." (Dkt. 1 at Ex. 2 at ¶ 35). Again on May 4, 2022, Hawley Troxell demanded Paddison pay assessments levied against his property. (*Id.* at ¶ 41). Then, on June 28, a notice of assessment and claim of lien was executed, and Hawley Troxell recorded the lien against Paddison's property on July 5. (Dkt. 1 at Ex. 2 at ¶¶ 43, 45). Finally, on September 14, Hawley Troxell again demanded payment of the alleged debt. (*Id.* at ¶ 48).

Thereafter, on October 27, 2022, Paddison filed a lawsuit in the State of Louisiana against Hawley Troxell, alleging claims for violation of the FDCPA and LUPTA. (Dkt. 1 at Ex. 2). In January 2023, Hawley Troxell removed the action to the United States District Court for the Eastern District of Louisiana (Louisiana District Court), moved to dismiss the case under Rule 12(b)(6) and (7) for failure to state a claim and to join a "required party," or alternatively, to transfer of venue to Idaho. (Dkts. 1, 5-1). Paddison opposed Hawley Troxell's motion to dismiss. (Dkt. 11). In support, he filed a fourteen-page declaration in which he makes numerous factual assertions and to which he attaches twenty documents purportedly related to the dispute. (Dkt. 11-

1). The Louisiana District Court issued a decision ruling that White Cloud must be joined as a required party under Rule 19(a)(1) of the Federal Rules of Civil Procedure and transferring the case to the District of Idaho under 28 U.S.C. § 1404. (Dkt. 17).

After the transfer, Hawley Troxell renewed its motion to dismiss Paddison's claims under Rule 12(b)(6). (Dkt. 25). Paddison responded to this renewed motion by citing at length to his prior declaration. (Dkt. 11-11). In response to Paddison's reliance on his declaration in opposition to the motion to dismiss, Hawley Troxell moves to strike Paddison's "declaration testimony." (Dkt. 32).

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While the complaint "does not need detailed factual allegations" to survive a motion to dismiss, the complaint must contain "more than labels and conclusions." *Twombly*, 550 U.S. at 555. In other words, the complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content allowing the Court to reasonably infer the defendant is liable for the misconduct alleged. *Id.* at 556. In assessing dismissal of claims under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

When a claim is grounded in fraud, however, the plaintiff's allegations must satisfy the heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b) demands the plaintiff allege the circumstances constituting alleged fraud specifically enough to give the defendant notice of the particular misconduct, so it can defend against the charge. *Vess*, 317 F.3d at 1106. To satisfy this demand, the plaintiff must allege "the who, what, when, where, and how" of the fraud, including what is false or misleading about a statement and why it is false. *Id.*

In resolving a motion to dismiss, a district court may not consider any materials beyond the complaint when ruling on that motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If the court considers evidence outside the pleadings, it must convert a motion to dismiss into a motion for summary judgment under Rule 56. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III. ANALYSIS

### A. Motion to Strike

As a preliminary matter, the Court addresses Hawley Troxell's motion to strike Paddison's declaration. (Dkt. 32). In responding to Hawley Troxell's Rule 12(b)(6) motion, Paddison cites to his declaration rather than to his complaint. Hawley Troxell argues the Court may not consider Paddison's "declaration testimony." (Dkt. 32-1 at p. 2). In support, it argues that generally the Court may not consider materials beyond the pleadings to resolve a Rule 12(b)(6) motion and that Paddison's "declaration testimony" does not meet either of the two exceptions to this general rule. (Dkt. 32-1 at p. 2). These exceptions include that a court may consider "documents attached to the

complaint" or "documents incorporated by reference to the complaint" without converting the motion to dismiss into a motion for summary judgment. *Ritchie*, 342 F.3d at 908.

Hawley Troxell is correct that Paddison's statements in his declaration constitute materials beyond the pleadings and do not meet either exception to the general rule allowing a court to consider such materials in resolving a Rule 12(b)(6) motion. *See, e.g.*, *Russell v. OneWest Bank FSB*, No. 1:11-cv-00222-BLW, 2011 WL 5025236, at *4 (Idaho Oct. 20, 2011) ("The Court cannot take judicial notice of an individual's affidavit, nor is the affidavit incorporated by reference in the Complaint."). For that reason, the Court may not consider Paddison's statements in the declaration.

Less clear, however, is whether Hawley Troxell intended to request the Court not consider the exhibits attached to Paddison's declaration. Paddison's complaint appears to reference at least some of these exhibits, as his opposition to Hawley Troxell's motion to strike notes. Hawley Troxell, however, never specifically addresses the exhibits; it neither asks the Court to strike them nor agrees they are incorporated by reference into Paddison's complaint. Hawley Troxell, however, does cite one of the documents in its reply in support of its motion to dismiss, which perhaps is a concession Paddison incorporated at least that document by reference in his complaint. (Dkt. 31 at p. 7) (citing Dkt. 11-11).

Nevertheless, the Court declines to consider any of the exhibits attached to Paddison's declaration. The record does not clearly indicate which, if any, of the attached documents the parties agree Paddison incorporated by reference into his complaint. Absent an agreement, whether the documents are properly authenticated for the record is questionable. Accordingly, the Court grants Hawley Troxell's motion. Despite Hawley Troxell's request to strike "declaration testimony," the Court strikes the declaration in its entirety, including the exhibits. If a party intends

to rely on one of the documents attached as an exhibit to Paddison's declaration in the future, that party will need to properly submit the document in the record.

**B. Motion to Dismiss**

**1. FDCPA - Statute of Limitations**

Paddison alleges Hawley Troxell's communications violated the FDCPA. Specifically, Paddison alleges that Hawley Troxell's "correspondence of July 2020, August 2022, and September 2022, violated 15 U.S.C. § 1692e(2)(a) by falsely representing the character or legal status of the debt" and that its "communications in 2022 violate 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to create a false debt and then attempt to collect [it]." (Dkt. 1-1 at ¶¶ 74(2), (7)). Hawley Troxell argues Paddison's FDCPA claim—as it relates to alleged violations before October 27, 2021—is time-barred.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors" to "protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA imposes affirmative requirements on debt collectors and prohibits a variety of debt-collection practices. *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1040 (9th Cir. 2023). Courts liberally construe the FDCPA in favor of consumers. *Id.* To prevail on an FDCPA claim, a plaintiff must establish a debt collector failed to comply with a provision of the FDCPA. *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1195 (9th Cir. 2019). Debt collectors are strictly liable for misleading and unfair debt collection practices in violation of the FDCPA. *Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1135 (9th Cir. 2021).

Section 1692e provides a violation of the FDCPA occurs when a debt collector makes a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a). Whether a debt collector's conduct violates § 1692e requires an objective analysis of "whether the 'least sophisticated debtor' would likely be misled by a communication." *Stimpson*, 944 F.3d at

1196 (quoting *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011)). "The 'least sophisticated debtor' is distinguished from the ordinary, reasonable person by being financially unsophisticated." *Stimpson*, 944 F.3d at 1196 (internal citation omitted). Though lacking financial experience and education, the "least sophisticated debtor" grasps the normal meaning of words, is capable of basic inferences, and is not unreasonable. *Id.* Meanwhile, § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." It provides a debt collector violates this prohibition by collecting or attempting to collect any debt not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The statute of limitations for an FDCPA violation is one year from the date of the violation. 15 U.S.C. § 1692k(d). Each alleged FDCPA violation "triggers its own one-year statute of limitations." *Brown*, 73 F.4th at 1040. In other words, separate communications can create separate causes of action arising from collection of a single debt. *See, e.g.*, *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010). "For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis." *Id.* "Any other rule would immunize debt collectors from later wrongdoing." *Id.* at 497 n.3. The statute of limitations begins to run on the date of the alleged violation, not the date on which the plaintiff discovered the violation. *Rotkiske v. Klemm*, 598 U.S. 8, 10 (2019); *Brown*, 73 F.4th at 1040-41.

Here, Paddison alleges Hawley Troxell's communications from July 2020 through September 2022 violate 15 U.S.C. § 1692e(2)(a). (Dkt. 1 at Ex. 2 at ¶ 74). Paddison also alleges Hawley Troxell's communications and conduct of perfecting a lien against his property violate 15 U.S.C. § 1692f(1). (Dkt. 1 at Ex. 2 at ¶ 74). As Hawley Troxell points out, however, FDCPA violations have a one-year statute of limitations. Paddison filed his complaint on October 27, 2022.

Accordingly, the Court concludes that any alleged FDCPA violation occurring ***before*** October 27, 2021, is clearly timed barred.[1] 15 U.S.C. § 1692k(d); *Brown*, 73 F.4th at 1040.

**2. FDCPA - Failure to Dispute Debt Under § 1692g**

Regarding Paddison's FDCPA claim as it relates to Hawley Troxell's May 4, 2022, correspondence to Paddison, Hawley Troxell argues these violations are barred because Paddison failed to timely dispute the debt under § 1692g. (Dkt. 25-1 at p. 6). This section of the FDCPA provides the debt collector must notify the debtor in its initial communication that it will assume the debt is valid "unless the [debtor], within thirty days after receipt of the notice, disputes the validity of the debt." 15 U.S.C. § 1692g. Hawley Troxell contends Paddison did not timely dispute the debt under § 1692g and requests the Court dismiss Paddison's FDPCA claim "[t]o the extent [it is] based upon any alleged violation of 15 U.S.C. § 1692g." (Dkt. 25-1 at p. 7). Hawley Troxell focuses specifically on its May 4, 2022, correspondence to Paddison, which it refers to as the "Second Alleged Debt Collection Letter." (Dkt. 25-1 a p. 6).

Paddison, however, does not allege a violation under § 1692g in his complaint.[2] Rather, Paddison alleges Hawley Troxell violated § 1692e(a) and § 1692f(1). Paddison was not required

---

1 In his response, Paddison contends "the operative act and the actual 'violation' pursuant to the FDCPA was the act of perfecting the Lien, which occurred in July 2022." (Dkt. 30 at p. 13). Nevertheless, Paddison's complaint alleges both that each communication from Hawley Troxell and that the perfection of the lien violated the FDCPA. (Dkt. 1 at Ex. 2 at ¶ 74). Each communication or act representing a violation of the FDCPA is subject to an individual one-year statute of limitations. 15 U.S.C. § 1692k(d); *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1040 (9th Cir. 2023). Consequently, those alleged violations occurring before October 27, 2021, are time-barred.

2 In response to Hawley Troxell's argument that Paddison did not dispute the validity of the debt under 15 U.S.C. § 1692g, Paddison responds that "the letter did not provide a statement of the entire amount owed" and suggests that he was not required to dispute the validity of the debt for this reason. Resolving this argument, however, would require the Court to consider materials beyond the pleadings which, as noted above, the Court declines to do for purposes of resolving Hawley Troxell's motion to dismiss.

to validate the debt before seeking relief under these sections. Numerous reasons support this conclusion, as the Third Circuit explained in *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247-48 (3d Cir. 2014). First, the FDPCA does not indicate Congress intended to require debtors to dispute debts under § 1692g before suing under § 1692e. *McLaughlin*, 756 F.3d at 247. Second, allowing a debtor to proceed under § 1692e without disputing the debt's validity under § 1692g is consistent with FDCPA jurisprudence and the purpose of the FDCPA as remedial statute with a "least sophisticated debtor" standard. *McLaughlin*, 756 F.3d at 247. Third, requiring validation per § 1692g before filing suit would allow a debt collector to avoid liability for a false communications simply because the request was not validated. *McLaughlin*, 756 F.3d at 248. Finally, not requiring a debtor to dispute a debt under § 1692g before suing does not frustrate the FDCPA's validation procedure because a debtor still has an incentive to follow the procedure "to cheaply and quickly resolve disputes with debt collectors." *McLaughlin*, 756 F.3d at 248; *see also Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 392 (4th Cir. 2014) (rejecting argument that debtor must follow § 1692g validation procedure before suing for § 1692e violation).

The rationale supporting the conclusion that a debtor does not need to follow the validation procedure under § 1692g before bringing a claim under § 1692e applies equally to a claim under § 1692f. *See Jammeh v. HNN Assocs., LLC*, 2020 WL 3266221, at *6 (W.D. Wa. June 17, 2020) (citing cases concluding debtor does not have to dispute validity of debt under § 1692g before asserting claim under § 1692f(). Accordingly, Paddison's failure to dispute the debt under § 1692g's validation procedure is not a basis to dismiss Paddison's non-time-barred claims under §§ 1692e and 1692f.

**3. LUTPA – Statute of Limitations**

Paddison also alleges Hawley Troxell violated the LUPTA because it "claimed and attempted or threatened to force a debt when [it knew] the debt is not legitimate" and asserted the

debt "without the valid existence of any homeowners [sic] association." (Dkt. 1 at Ex. 2 at ¶ 76). Hawley Troxell argues any alleged violation of LUPTA occurring more than one year before Paddison filed this lawsuit on October 27, 2021, is time-barred. (Dkt. 25-1 at pp. 5-6). Like the FDCPA, the LUPTA's statute of limitations is one year. La. R.S. 51:1409(E) ("The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action.").

Paddison does not dispute Hawley Troxell's assertion that his LUPTA claim based on violations occurring before October 27, 2021, is beyond the applicable statute of limitations. Rather, Paddison argues the continuing tort doctrine applies to avoid the statute. In support, he cites *Bihm v. Deca Systems, Inc.*, 226 So. 3d 466 (Ct. App. La. 2017). In that case, Deca employed Bihm, who misappropriated Deca's confidential computer information when he left Deca's employment and began a competing business. *Id.* at 489. Deca brought a claim under LUPTA against Bihm for unfair methods of competition and unfair or deceptive acts, and Bihm argued the statute of limitations barred claims occurring more than one year before Deca filed its action. *Id.* The court rejected this argument, relying on the continuing tort doctrine. *Id.* The court noted "a continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed and a continuing breach of that duty." *Id.* It concluded that Bihm had a "continuing duty to refrain from acquiring or misappropriating" Deca's trade secret information and to refrain from disclosing that information to others and that, as a result, the statute of limitations did not begin to run on Deca's LUPTA claims until Bihm's wrongful acts ceased. *Id.*

As Hawley Troxel notes, however, the continuing tort doctrine does not apply to all LUPTA violations. For example, the Louisiana Court of Appeals rejected application of the

doctrine in cases in which the plaintiff alleged a series of discrete, unlawful acts against the defendant. *See 2802 Mag. St., LLC, v. Eggspressions of N. Am., LLC*, 274 So.3d 1279, 1283-84 (La. Ct. App. 2019) (distinguishing *Bihm*); *Cajun Rest. & Bar, Inv. v. Maurin-Ogden 1978 Pinhook Plaza*, 574 So.2d 536, 539 (La. Ct. App. 1991) (rejecting continuing tort doctrine). In this case, Paddison fails to allege any continuing duty owed and breached. For that reason, this case is distinguishable from *Bihm* and more akin to *Eggspressions* and *Cajun Rest.* Moreover, Paddison alleges Hawley Troxell's separate communications constituted "false misrepresentations of the character amount and legal status of any alleged debt" as violative of the LUPTA—namely Hawley Troxell's "correspondence of July 2020, August 2022, and September 2022." (Dkt. 1 at Ex. 2, ¶ 74(2)). For these reasons, the continuing tort doctrine does not apply in this case, and any alleged violations occurring before October 27, 2021, are time-barred.

**4. LUPTA – Failure to State a Claim**

Regarding Paddison's alleged LUPTA violations occurring after October 27, 2021, Hawley Troxell alleges Paddison has failed to state a claim for relief. In support, it argues that Paddison failed "to plead sufficient facts to support fraud, misrepresentation, or deception" and that it "did not violate LUPTA by simply conveying its client's position to [Paddison] or by assisting its client in filing a legal document to secure [the client's] rights." (Dkt. 25-1 at p. 9). Although Hawley Troxell does not assert Paddison's allegations of fraud and misrepresentation must comport with Rule 9(b), the courts in the Fifth Circuit have held a plaintiff is required to meet the heightened pleading requirements under Rule 9(b) when alleging LUPTA claim based on fraudulent misrepresentations. *See, e.g.*, *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009) (applying Rule 9(b) to allegations of LUPTA claim).

The Court concludes Paddison's LUPTA claim meets Rule 9(b)'s heightened pleading requirements. Although Paddison's LUPTA claim is only three paragraphs long, he "repeats and

realleges" all his other factual allegations in support of his FDCPA allegations. (Dkt. 1 at Ex. 2 at ¶¶ 75-78). These allegations aver, among other things, that Hawley Troxell improperly formed the White Cloud HOA and then attempted to collect "illegitimate debts in the form of improper association assessments" and "corresponding inflated attorney fees and interest charges." (*Id.* at ¶ 8). Paddison specifically alleges the written communications he avers constitute false misrepresentations regarding the alleged debt, including Hawley Troxell's "correspondence of July 2020, August 2022, and September 2022." (*Id.* at ¶ 74(2)). These and Paddison's other allegations regarding the specifics of the alleged violations are sufficient to meet Rule 9(b)'s heightened pleading requirement.

Hawley Troxell's argument that Paddison may not assert a LUPTA claim against Hawley Troxell because it has a litigation privilege protecting it against such a claim is without merit. The litigation privilege protects "an attorney acting within the law, in a legitimate effort to zealously advance the interests of his client." *Taylor v. McNichols*, 243 P.3d 642, 656 (Idaho 2010). It does not, however, "provide attorneys with a blanket immunity against all claims raised against them." *Id.* at 655. For example, it does not necessarily protect an attorney against a fraud claim: "[A] fraud claim against a lawyer is not different from a fraud claim against anyone else. If an attorney commits actual fraud in his dealing with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability." *Id.* (quoting *Vega v. Jones, Day, Reavis & Pogue*, 17 Cal. Rptr. 3d 31-32 (Cal. Ct. App. 2004)).

Here, Paddison alleges Hawley Troxell was not just acting as an attorney for its clients but in the capacity of a debt collector. Specifically, he alleges Hawley Troxell "identified itself as a debt collector on its website" and "represented to [him] that it [was] a debt collector." (Dkt. 1 at Ex. 2, ¶¶ 17, 21). If, indeed, Hawley Troxell was acting as a debt collector and made false

misrepresentations about a debt, then the litigation privilege may not protect it against claims based on that conduct. Those issues, however, cannot be resolved on a motion to dismiss. Accordingly, Paddison's allegations are sufficient to assert a LUPTA claim for violations occurring after October 27, 2021.

### 5. Requested Relief From White Cloud's Lien

Paddison requests this Court enjoin the enforcement of White Cloud's lien, declare that lien invalid, and remove it from Idaho's records. Hawley Troxell argues, however, that this Court cannot grant such relief against Hawley Troxell because Hawley Troxell does not own the lien. (Dkt. 25-1 at p. 11). In response, Paddison argues Hawley Troxell "ignore[s] and minimize[s] its involvement in directing these matters"; filed the lien without notice to Paddison; attempted to collect the debt underlying the lien; and "fail[s] to recognize" the lien includes Hawley Troxell's legal fees. (Dkt. 30 at p. 18).

Paddison's argument, however, ignores that the Louisiana District Court has already ruled on this issue. In addressing Hawley Troxell's original motion to dismiss, the Louisiana District Court ruled White Cloud is a "required party" under Rule 19(a) of the Federal Rules of Civil Procedure. (Dkt. 17 at p. 5). Specifically, the court ruled that "proceeding without [White Cloud] would certainly impair its abilities to protect its interests"; "the debt in question is inextricably tied to the formation of White Cloud and the subsequent fees assessed against [Paddison's] property"; and White Cloud has an interest in defending against [Paddison's allegations] and disposing of this action without [its] presence would render [it] unable to defend its lien." (*Id.* at pp. 5-6). That White Cloud is a required party to this action was, at least in part, a fact on which the Louisiana District Court based its decision to transfer the case under 28 U.S.C. § 1404 to this Court. (Dkt. 17 at p. 13) ("[T]he formation of White Cloud and the creation of the lien that underly the debt collection efforts are vital to the adjudication of this case.").

The Louisiana District Court's ruling that White Cloud is a required party under Rule 19(a) is the law of the case. *See, e.g.*, *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1368-69 (11th Cir. 2003) (discussing application of law of case doctrine in case transferred under 28 U.S.C. § 1404). Under the law of the case doctrine, a court is generally precluded from reconsidering issues already decided in the case. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Id.* "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.*

Here, Paddison offers no argument or explanation why the Louisiana District Court's ruling that White Cloud is a required party to resolve issues related to the validity and enforcement of the lien is erroneous or should otherwise be reconsidered. Further, Paddison has not moved to add White Cloud as a party to this case despite the Louisiana District Court's prior ruling. Based on the law of the case, this Court declines to rule on issues adversely impacting White Cloud's lien because its absence from this litigation impairs its ability to protect its interests in the lien.

In summary, the Court strikes Paddison's declaration and its attachments and considers only the allegations in his complaint for purposes of addressing Hawley Troxell's motion to dismiss. In resolving that motion, the Court dismisses Paddison's FDCPA and LUPTA claims to the extent they are based on alleged violations occurring before October 27, 2021. The statute of limitation bars those alleged violations. To the extent Paddison's FDCPA and LUPTA claims are based on alleged violations occurring after October 27, 2021, Paddison has stated viable claims for relief under FDCPA and LUPTA. The Court, however, will not grant any relief adversely

affecting White Cloud's protectable interests in its lien because Paddison failed to join White Cloud, which is a required party under Rule 19(a), as the Louisiana District Court previously ruled in this case.

## IV. ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 25) is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendant's Motion to Strike Plaintiff's Declaration (Dkt. 32) is **GRANTED**.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: June 06, 2024

Amanda K. Brailsford
U.S. District Court Judge